GREAT WESTERN POWER COMPANY OF CALIFORNIA, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48617. Promulgated April 26, 1934.

*Thomas R. Dempsey, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine deficiencies in the income taxes of the petitioner for the years 1924, 1925, and 1926 in the amounts of $26,293.40, $187,883.90, and $133,333.99, respectively.

Several allegations of error were disposed of by stipulation, leaving for decision the following questions:

(1) The proper treatment of the sum of $245,363.02 claimed as a deduction from income for 1924, the item representing unamortized bond discount, expenses, and premiums paid in connection with a bond issue retired in 1924 before maturity, in part by payment of cash and in part by the exchange of the bonds for bonds of a later issue.

(2) The similar question as to a sum of $868,189.12 applicable to a second bond issue redeemed for cash and retired in 1925 before maturity.

The petitioner also asserts that the adjustments covered by stipulation and the second assigned error will result in an operating loss which should be carried forward as a deduction in determining its net taxable income for the year 1926.

The facts were stipulated, and, so far as material to the issues, are substantially as follows:

1. At all times herein material the Great Western Power Company of California, hereinafter called the petitioner, was a public utility corporation engaged in the generation of electricity and its distribution in and about the cities of San Francisco, Oakland, Sacramento, and others in central California. As a public utility the petitioner was subject to the jurisdiction of the California State Railroad Commission and kept its books on the accrual basis in accordance with the classification of accounts prescribed by the said commis-

sion. The petitioner's income tax returns for the years herein involved were made on the accrual basis.

2. On March 1, 1919, the petitioner executed a trust indenture entitled "First and Refunding Mortgage". Pursuant to the said indenture the petitioner has issued four series of its "First and Refunding Mortgage Sinking Fund Gold Bonds". The individual series of these bonds have been styled "Series A 6%", "Series B 7%", "Series C 6%", and "Series D 5½%" respectively, but hereinafter for the sake of brevity the various issues will be referred to merely as the "Series A 6's", "Series B 7's", etc. Likewise the indenture will hereinafter be referred to as the "Refunding Mortgage". All of the Series B and Series D bonds which may be material to the present controversy were authorized as set forth in certain resolutions of the petitioner's board of directors dated December 7, 1920, April 8, 1921, June 21, 1921, February 5, 1925, February 5, 1925, May 15, 1925, and September 25, 1925.

3. On August 1, 1920, the petitioner executed a second trust indenture, hereinafter referred to as the "Mortgage Indenture".

4. During the year 1920 the petitioner, pursuant to the terms of the Mortgage Indenture, issued and sold $5,000,000 face value of its General Mortgage 8 per cent Gold Bonds dated August 1, 1920, and due August 1, 1930. These bonds, which will hereinafter be referred to as the "General Mortgage 8's", were, under the provisions of the Mortgage Indenture, convertible under certain conditions into Series B 7's, and in 1922 the holders of $4,671,100 face value thereof actually made such conversion.

5. On February 1, 1921, the petitioner executed a third trust indenture, hereinafter referred to as the "General Lien Indenture."

6. During the year 1921 the petitioner, pursuant to the provisions of the General Lien Indenture, issued and sold $2,500,000 face value of its General Lien 8 per cent Gold Bonds dated February 1, 1921, and due February 1, 1936. These bonds, which will hereinafter be referred to as the "General Lien 8's", were sold at a discount of $150,000 and the expense of issuance was $22,283.54. The General Lien 8's were convertible under certain circumstances into Series B 7's, and on August 1, 1924, the holders of $2,354,500 face value thereof actually made such conversion.

7. Prior to December 31, 1923, the petitioner had purchased and retired $11,000 face value of the General Lien 8's and the unamortized discount and expense of issuance applicable thereto was charged off as a loss in the year of retirement.

8. On August 1, 1924, pursuant to a resolution adopted by the petitioner's board of directors on May 8, 1924, the holders of $2,354,500 face value of the General Lien 8's exchanged them for a like amount of Series B 7's and received, in addition to the Series B bonds, a cash premium of $117,725. Such exchange was made in accordance with the provisions of the option granted by the General Lien Indenture. The unamortized discount and expense applicable to such converted bonds was, on August 1, 1924, $126,176.97 and the expense of conversion was $1,461.05. The sum of the three items named: The premium paid, unamortized discount and expense of conversion, was $245,363.02, of which the respondent has allowed as a deduction for the year 1924 only $2,027.96 and for the year 1926 only $8,735.78.

The petitioner contends that the full amount of $245,363.02 is allowable as a deduction for the year 1924, whereas the respondent contends that such amount should be amortized over the life of the Series B 7's which were exchanged for the General Lien 8's. If the $245,363.02 be allowed in full as a deduction for

the year 1924, the petitioner's net income for the year 1926 as shown in the deficiency letter may be increased by the sum of $8,735.78.

9. As of August 1, 1924, the petitioner purchased for cash and retired all of the General Lien 8's which remained outstanding after the conversion referred to in paragraph 8. These outstanding bonds, which were of a face value of $134,500, were purchased by the petitioner at a premium of $6,725; the unamortized discount and expense applicable to such bonds on August 1, 1924, was $7,207.82 and the expense of retirement was $83.46. The sum of the three items named: to wit, premium paid on retirement, unamortized discount and expense, and expense of retirement, is $14,016.28, of which the respondent has allowed as a deduction for 1924 only $5,464.08. The respondent now concedes that the balance of $8,552.20 is also an allowable deduction for the year 1924.

10. During the year 1921 the petitioner issued its second series of bonds under the refunding mortgage. These bonds, the Series B 7's, were dated August 1, 1920, and were due August 1, 1950.

11. The said Series B 7's were issued to a face value of $8,500,000 and were disposed of as follows:

| Par value | Disposal |
|---|---|
| $5,000,000 | Delivered to the trustees under the General Mortgage Indenture and held by them as additional security for the General Mortgage 8's. |
| $2,500,000 | Delivered to the trustees under the General Lien Indenture and held by them as additional security for the General Lien 8's. |
| $1,000,000 | Sold to the public in 1921 for cash at a discount of $100,000. |
| $8,500,000 | Total issued. |

The expense of issuing the entire Series B was $49,548.14.

12. The $5,000,000 face value of Series B 7's delivered to the General Mortgage trustees were disposed of by them as follows: $4,671,100 face value were exchanged in 1922 for a like amount of General Mortgage 8's outstanding in the hands of the public and the remaining $328,900 were returned to the petitioner by reason of the cash redemption after the call date of a like amount of General Mortgage 8's. None of the Series B 7's so returned to the petitioner were thereafter re-issued.

13. The $2,500,000 face value of Series B 7's delivered to the General Lien trustees were disposed of by them as follows: $2,354,500 were exchanged on August 1, 1924, for a like amount of General Lien 8's outstanding in the hands of the public and of the remainder, $145,500 face value, $11,000 face value were returned to the petitioner by reason of the latter's retirement and delivery to the trustees for cancellation of a like amount of General Lien 8's which the petitioner had purchased from the public for cash, and $134,500 were returned to the petitioner by reason of the cash redemption after the call date of a like amount of General Lien 8's. None of the Series B 7's so returned to the petitioner were thereafter reissued. In addition to the $474,400 face value of Series B 7's which were reacquired by the petitioner as indicated above, $603,000 face value of the Series B 7's were reacquired by the petitioner prior to June, 1925, and as to such bonds there is no dispute.

14. In 1925 the petitioner began and consummated a program of partial refinancing which resulted in the retirement of its outstanding Series B 7's and the issuance of a fourth series of bonds under the "Refunding Mortgage". These new bonds, the Series D 5½'s were dated February 1, 1925, were due

February 1, 1955, and bore interest at the rate of 5½ per cent per annum. The following is a tabular analysis of the retirement of the Series B 7's:

| Date | Par value of Bonds retired | Premiums Paid in Cash | Unamortized Discount and expense | Expense of Retirement |
|---|---|---|---|---|
| June, 1925 | $419,700.00 | $43,415.22 | $7,399.61 | |
| July, 1925 | 257,400.00 | 10,863.50 | 4,523.15 | |
| Aug. 1, 1925 | 6,745,500.00 | 674,550.00 | 117,989.72 | |
| Totals | $7,422,600.00 | $728,828.72 | $129,912.48 | $9,447.92 |

The following is a tabular analysis of the issuance of the Series D 5½'s:

| Date | Purchaser | Par value | Discount | Expense of issuance |
|---|---|---|---|---|
| March, 1925 | E. H. Rollins & Sons | $1,500,000 | $112,500 | |
| June 10, 1925 | E. H. Rollins & Sons | 6,300,000 | 315,000 | $47,094.15 |
| July 15, 1925 | Western Power Corp | 700,000 | 35,000 | |
| Subsequent to Aug. 1, 1925 | E. H. Rollins & Sons | 1,000,000 | 50,000 | |

All of the Series B 7's were redeemed for cash. The amounts necessary for the June, 1925, and July, 1925 redemptions and for the payment of the expense item of $9,447.92 were taken from the general funds in the petitioner's treasury. The amount of cash necessary for the August 1, 1925, redemption was $7,420,500. This amount was derived from the following sources:

By the previous issuance and sale of $7,000,000 face value of Series
   D 5½'s at a discount of 5% _____ $6,650,000
Petitioner's general funds (including $141,808.32 representing interest accrued on the $7,000,000 of bonds from February 1, 1925, to
   date of issuance) _____ 770,050

$7,420,050

The amounts of $6,650,000 and $141,808.32 indicated above as derived from the sale of Series D 5½'s were not received by the petitioner, but were paid by the purchasers to the Bank of America and held in escrow until August 1, 1925, and were then paid directly to the trustees under the " Refunding Mortgage."

During the year 1925 the Railroad Commission of California, pursuant to application filed by the petitioner, issued its opinions and orders dated February 5, 1925, May 27, 1925, and October 21, 1925, and numbered respectively 14541, 14979 and 15544, granting permission to the petitioner to issue and sell the several installments of Series D 5½ per cent refunding mortgage bonds.

15. The petitioner contends that the sum of $868,189.12 representing the items " Premiums Paid "—$728,828.72, " Unamortized Discount and Expense "—$129,912.48 and " Expense of Retirement "—$9,447.92 shown above in connection with the retirement of the Series B 7's constitutes an allowable deduction for the year 1925.

The respondent contends (a) that said sum of $868,189.12 (including also the unamortized portion of the amounts referred to in paragraph (8) hereof) should be treated as part of the capital cost of refinancing and refunding the petitioner's bonded indebtedness, and should be treated in its entirety as appli-

cable to the Series D 5½'s maturing February 1, 1955, and amortized over the remaining life of the Series D 5½'s; (b) that $\frac{\$7,000,000}{\$7,422,600}$ of said sum should be treated as applicable to the Series D 5½'s to be amortized over their remaining life; (c) that the sums of $674,550, $117,989.72, $\frac{\$6,745,500}{\$7,422,500}$ of the expense of retirement and the unamortized portion of the amounts referred to in paragraph 8 hereof should be treated as applicable to the Series D 5½'s and amortized over their remaining life; or (d) that at least $\frac{\$6,650,000}{\$7,420,050}$ of the amount referred to in (c) should be treated as applicable to the Series D 5½'s and amortized over their remaining life.

16. In determining the deficiencies for the years 1924, 1925 and 1926 the respondent allowed deductions in respect to the petitioner's General Lien 8's, Series B 7's and Series D 5½'s as indicated below:

| Description | 1924 | 1925 | 1926 |
|---|---|---|---|
| General Lien 8's: | | | |
| Amortization of discount and expense on outstanding bonds__ | *$6,765.90 | ------------- | ------------- |
| Loss on retirements_____ | 5,464.08 | ------------- | ------------- |
| | (See par. 9) | | |
| "B 7's" Account General Lien 8's: | | | |
| Amortization of premiums, discount and expense on General Lien 8's converted into Series B 7's on Aug. 1, 1924_____ | 2,027.96 | ------------- | ------------- |
| | (See par. 8) | | |
| Series B 7's: | | | |
| Amortization of discount and expense on outstanding bonds__ | *5,227.32 | *$3,039.57 | ------------- |
| Loss on bond retirements (Prior to June, 1925)_____ | ------------- | *4,046.56 | ------------- |
| "D 5½'s" Account Series B: | | | |
| Amortization of amounts referred to in par. 8 hereof_____ | ------------- | ------------- | $8,735.78 |
| Series D 5½'s: | | | (See par. 8) |
| Amortization of discount and expense of issuance_____ | ------------- | *9,047.44 | *18,782.28 |
| Loss on bond retirements prior to Dec. 31, 1925_____ | ------------- | *3,714.34 | ------------- |

* There is no dispute between the parties with reference to these items.

17. In addition to the adjustments to the petitioner's tax liability which may result from the foregoing facts, the petitioner is entitled to the following deductions from the amounts of net income indicated in the notice of deficiency: [Here follows a list of deductions, aggregating $1,220 for 1924, $26,558.76 for 1925, and $11,928.18 for 1926, to which it is agreed petitioner is entitled and which will be allowed in settlement under Rule 50.]

18. The amounts of unamortized discount and expense, premiums paid, and expense of retirement applicable to the General Lien 8's (referred to in paragraph 8 hereof) were not charged to profit and loss on the petitioner's books, but were transferred to "Discount and Expense Series B Account General Lien" to be amortized over the remaining life of the Series B 7's. The amounts of unamortized discount and expense (including the unamortized portion of the amounts referred to above), premiums paid, and expense of retirement applicable to the Series B 7's (referred to in paragraph 14 hereof) were not charged to profit and loss on the petitioner's books, but were transferred to "Discount and Expense Series D 5½'s Account Series B 7's" to be amortized over the remaining life of the Series D 5½'s.

19. In the event that it be determined that the petitioner sustained an operating loss for the calendar year 1925, the petitioner and respondent stipulated that for the purpose of computing the net loss under section 206 of the Revenue Act of 1926 to be deducted from the petitioner's net income for the calen-

dar year 1926, such operating loss should be adjusted on account of the following items:

| | |
|---|---|
| Dividends of domestic corporations | $50.00 |
| Non-taxable interest on obligations of the United States | 2,087.21 |
| Total adjustment | 2,137.21 |

Petitioner's position as to the premiums paid, unamortized discount, and expenses attaching to the bonds retired for cash in 1925 is amply supported by the decisions of the Board and the courts. *S. & L. Building Corp.*, 19 B.T.A. 788; *East Ninth Euclid Co.*, 26 B.T.A. 32 (affirmed on rehearing, 27 B.T.A. 1289); *Indiana Lamp Corp.*, 28 B.T.A. 491; *National Tile Co.*, 30 B.T.A. 32; *San Joaquin Light & Power Co.* v. *McLaughlin*, 65 Fed. (2d) 677; *Union Pacific R.R. Co.* v. *Commissioner*, 69 Fed. (2d) 67. The deduction should have been allowed in 1925 when the bonds were redeemed and retired.

As to the year 1924 petitioner has been allowed previously, or respondent at the hearing has conceded the propriety of, a deduction for all unamortized discount and expense attaching to bonds retired by the payment of cash. The only question remaining for solution is the treatment of similar items of premium paid, unrecovered discount, and expense attaching to the $2,354,500 General Lien 8's which were exchanged by the holders for a like number of Series B 7's, plus a cash premium.

In 1921 petitioner issued $2,500,000 par value of General Lien 8's for the purpose of acquiring new capital. The discount and other selling expenses were incurred at that time and constituted a cost of acquiring such new capital. Such cost related solely to the issue of the $2,500,000 General Lien 8's and by accepted practice was amortizable over the life of the bonds. *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695; *Union Pacific R.R. Co.* v. *Commissioner, supra.*

When in 1924 the General Lien 8's were reacquired and retired in part by payment of cash and in part by exchange of the outstanding General Lien 8's for Series B 7's, plus a cash premium, the process of amortization was interrupted. The Series B 7's issued August 1, 1920, were a part of a totally different bond issue, and though both were related to the First and Refunding Mortgage of 1919 in that they looked to that mortgage for security, they constituted wholly separate steps in petitioner's financing. Each issue had its own costs and was entitled to amortize such costs over the life of its bonds. Respondent conceded by his treatment of the same that the unrecovered costs attaching to the bonds of the General Lien 8's issue reacquired for cash constituted a deductible loss in 1924 when so purchased and retired. We can see no proper

basis for distinguishing in principle the bonds retired after reacquisition by exchanging for Series B 7's plus a cash premium. The General Lien 8's bond issue was *pro tanto* wiped out and there were no longer any bonds to which the unrecovered costs were kin or to which they could adhere. These costs were not part of the cost of floating the Series B 7's, nor were they related to the bonds of that series in any other way. In our opinion there was no such interissue relationship as to permit us to say that when part of the General Lien 8's were exchanged for a like number of Series B 7's the incidents of the General Lien 8's were separated therefrom and attached to the Series B 7's. The General Lien 8's paid 8 percent and matured in 1936. The Series B 7's paid 7 percent and matured in 1950. Assuming a contrary holding, the query would at once arise as to the period over which the unrecovered costs should be spread. Should the same amount allowed as a proportionate annual deduction under the old issue be permitted until exhaustion, or would only a lesser amount proportioned to the entire term of the new issue be deductible? The answer which we have reached as to the major question obviates the necessity of considering this question and other practical obstacles consequent on a contrary decision.

We believe the matter is to be determined from the standpoint of the issuing corporation and its action in the premises rather than from the position of the bondholders and the fact that some of the bondholders chose to exercise their option and accept the new bonds and a cash premium in exchange for the old bonds. In other words, the case should be determined on the basis of principle rather than on the ground of circumstance. The Board and the courts have approved the deductibility of unrecovered costs in the instance of cash redemption and here the respondent concedes the same. We can not distinguish in principle the situation where, in the same transaction, part of the bondholders exchange their bonds for those of the new issue plus a cash premium.

We need not consider a situation, if it could conceivably exist, in which a subsequent issue by its terms takes the place of a former issue, both being parts of a general plan, and the exchange being mandatory. Here the right to exchange was optional with the bondholders. As to whether an exercised right of conversion could have the effect of extending the term of bonds, see *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381; certiorari denied, 284 U.S. 690.

In an almost identical situation the Circuit Court of Appeals for the Ninth Circuit held, in *San Joaquin Light & Power Co.* v. *McLaughlin, supra*, that unrecovered costs attached to bonds which were redeemed in part in cash and in part by exchange for a new series were all deductible from income in the year of redemption. We are of the opinion that the premiums paid, unamortized discount,

and other financing costs related to the bonds of the series General Lien 8's retired in 1924 were deductible in that year.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting: In my opinion, the proportionate unamortized discount and costs of the General Lien 8's, dealt with in the second point, should not be deducted in 1924 when they were converted, as originally provided, into 7's; but should be spread over the term of the 7's. I agree with Judge Mack's dissenting opinion in *San Joaquin Light & Power Co.* v. *McLaughlin*, 65 Fed. (2d) 677, that the obligation of the 7's should be regarded as a continuation *pro tanto* of the indebtedness of the original issue.